## No. 14,906.

### MONTEZ ET AL. *v*. THE PEOPLE.
(132 P. [2d] 970)

Decided December 21, 1942. Rehearing denied January 11, 1943.

Mr. ROMILLY FOOTE, Mr. GEORGE H. BLICKHAHN, Mr. CHARLES A. MURDOCK, Mr. CHARLES T. MAHONEY, for plaintiffs in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFFS in error, defendants below, who had been deputies in the office of the treasurer of Huerfano county, were indicted by a grand jury on eight counts wherein in various forms they were charged with the commission of the same number of criminal offenses, all allegedly arising from their conduct in connection with

the assignment of tax sale certificate No. 218 of Huerfano county. In the trial thereof, at the conclusion of the people's case, the district attorney elected to proceed on count six which charged defendants with obtaining $140.62 from Huerfano county by false pretenses, and a verdict of guilty on such count was returned by a petit jury. Following the overruling of a joint motion for new trial, the entry of judgment and imposition of sentence, defendants sued out the writ of error with which we are now concerned. The tax sale certificate involved was issued to Huerfano county as the result of a sale of the real property described therein for the 1933 taxes. Subsequently taxes for the years 1934 and 1935 were endorsed on the certificate. On April 13, 1937, the Eastern Star Home of Denver, to which the property described therein later was conveyed by the owner of record, wrote to the county treasurer inquiring, inter alia, as to "the amount of back taxes, and what steps should be taken to clear the property." The writer received no reply to this letter, but on May 7, 1937, a petition bearing the signature "C. H. Pross" was presented to the board of county commissioners of Huerfano county wherein $101.38 was offered for the assignment of such tax sale certificate. At the trial a handwriting expert testified that such signature "C. H. Pross" was written by the defendant Vonatti. On May 10, 1937, by formal resolution, the commissioners authorized the treasurer to assign the certificate for the amount offered. Inconsistently with the date of such resolution, the assignment to Pross on the certificate itself made by defendant Montez, as deputy treasurer, bears the date of *January 18, 1935,* with the figure "5" in the latter date partly obliterated by a superimposed figure "7". In the handwriting of defendant Montez the record of the tax sales in the treasurer's office incorrectly gives the date of the assignment from the county to Pross as January 18, 1935. On May 17, 1937, Mr. Fine, attorney for the Eastern Star Home, wrote to the county treasurer in-

quiring as to the ownership of the certificate and requesting information as to "the exact amount necessary to pay * * * for the assignment thereof." On the 18th the defendant Montez, as deputy treasurer and on the letterhead of the county treasurer, replied advising that "It will take the sum of $239.71 to effect redemption and perhaps a likely sum for an assignment from the holder, a Mr. C. H. Pross, last known address Kingman, Arizona." Mr. Fine testified that he addressed a letter concerning the matter to Mr. C. H. Pross, Kingman, Arizona, which later was returned by the postal service as unclaimed. Thereafter, on June 10, Mr. Fine wrote to the treasurer asking "If you could help me by giving me the address of this Pross if you now have it." On the 11th defendant Montez, as deputy treasurer, answered as follows: "Will state that this party has assured the office that he will assign the certificates held by him upon payment of redemption money, at present the last known address of Mr. Pross, was Kingman, Arizona." On July 12, Montez, as deputy, wrote to Mr. Fine: "Mr. Pross holding tax sale certificate No. 218 * * * has entered blank assignment to the above certificate for the sum of $242.00, if you are still interested in this certificate you may remit this office and it will be forwarded to you at once." On July 17 Mr. Fine went to the office of the treasurer of Huerfano county with a certified check for $242.00, payable to "C. H. Pross," which he delivered to the "gentleman in the cage" and after some delay, the certificate in question, assigned to Mr. Fine, was delivered. Tax deed later issued on the certificate. The testimony of expert witnesses was to the effect that the signature "C. H. Pross" on the assignment to Mr. Fine and the endorsement of such name on the check was written by defendant Vonatti. A handwriting expert also testified that the name "John S. Fine" inserted in the blank assignment on the certificate was written by Montez. Neither defendant took the witness stand and no evidence disput-

ing any statement in the foregoing synopsis was adduced in their behalf.

Count six of the indictment, upon which the conviction was had, charged that defendants "designing and intending unlawfully, feloniously, fraudulently, designedly, knowingly and wilfully to deprive the county of Huerfano" of $140.62, which it will be observed was the difference between the $101.38 paid to the county for the assignment and the $242.00 due on the face of the certificate and paid by Mr. Fine for the second assignment, by "then and there feloniously, wilfully, unlawfully, designedly and falsely" stating and representing to the said county that one C. H. Pross had made, executed and caused to be delivered to Huerfano county, "through its representative officers, a certain tax petition for the purchase of tax sale certificate No. 218, and the said County of Huerfano" through its board of county commissioners "believing and relying upon such unlawful * * * wilfull, fraudulent and false representations * * * did allow and grant the said petition * * * by which false pretenses the said defendants then and there with intent to cheat and defraud the said county, * * * wilfully * * * did obtain" the sum of $140.62 of the county's money and that such county "by these false and fraudulent pretenses was defrauded in that sum."

Defendants argue that the indictment is fatally defective in that it fails to state: (1) That the county was deceived; (2) "that false pretenses were not negatived therein," and, (3) that it fails to state that defendants had knowledge that the pretenses alleged were false.

■ The effect of these contentions are to concede that the indictment would be impregnable to attack if, in addition to the allegation that the county commissioners "believing and relying upon such unlawful * * * wilfull, fraudulent and false representations," proceeded as charged, it had been stated therein, "and being deceived thereby" and if the allegation that defendants

"designedly and falsely did state and represent to the said county * * * " that one C. H. Pross had caused to be delivered by the defendants a certain tax petition to the board, had been followed by the statement: that in truth and in fact such was not the petition of C. H. Pross, and if the words, well knowing them to be false, categorically had been included at the various places the alleged false statements and representations were mentioned. This comparison of what was alleged, with what defendants contend should have been charged, discloses the inessentiality of the inclusion of matters said to have been omitted, and demonstrates the impossibility of defendants having been injured or misled in any substantial particular in these respects by the allegations of the indictment as laid.

*LaShar v. People,* 74 Colo. 503, 223 Pac. 59, cited by defendants, wherein the indictment was held defective because of a negative pregnant arising from the form of the charge, is not pertinent since no similar situation attains here. We also believe that no pronouncement of the opinion in *Tracy v. People,* 65 Colo. 226, 176 Pac. 280, also cited by defendants, supports their arguments on the objections advanced.

It next is asserted that the evidence was insufficient to prove the crime charged. As defined by section 305, chapter 48, '35 C.S.A., the offense is consummated where "knowingly and designedly, by any false pretense or pretenses" a person shall obtain from another "any chose in action, money * * * or other valuable thing whatsoever, with intent to cheat or defraud any such person * * * of the same." This statute has application where a county is the victim. See, *Roberts v. People,* 9 Colo. 458, 13 Pac. 630. In *People v. Brown,* 93 Colo. 182, 24 P. (2d) 759, we held that it was illegal for a county treasurer to privately deal in tax sale certificates. That the same inhibition applies to a deputy treasurer would seem axiomatic. As a practical matter, as one of the county commissioners testified in the case

at bar, it would be illogical to assume that any board of such would authorize the assignment of a tax sale certificate for less than the amount required for redemption if they knew such was in early prospect. The jury could properly have inferred from the evidence, as their verdict indicates they did, that upon receiving information in their official capacity that the redemption of the certificate here involved was probable and imminent, defendants determined to personally profit thereby. To so accomplish it was necessary that they acquire the certificate for an amount less than the sum which would be paid for redemption. As has been mentioned, this, in their official positions, they could not do legitimately, so resort was had to devious methods. By the deception of a petition falsely conceived and deliberately untrue as to its representations and the manner of its execution, they induced the county commissioners to authorize an assignment of the certificate, later consummated by one of the defendants as deputy treasurer, for an amount less than one-half the sum the county would have received had the assignment not been made. As anticipated, the taxpayer thereafter paid the larger amount, as a result of which the loss to the county of the difference was as definite and tangible as if the money had been removed from the cash drawer in the treasurer's office. The proof that the endorsement of the name of the payee Pross on the taxpayer's check— the only individual endorsement thereon—was by the hand of one of the defendants leads irresistibly to the presumption that he received the money therefor. The active, dovetailed-cooperation of defendants in carrying out the details of their fraudulent scheme connected both with the transaction. The foregoing proof was sufficient to establish the offense set out in the statute, regardless of the evidence of similar transactions. We are, therefore, unable to concur in the contention of counsel for defendants that the verdict was based upon guess or surmises of guilt rather than proof thereof. It

was not necessary as an essential of conviction, for the people to prove conclusively that "C. H. Pross" was a fictitious person or that he did not authorize the defendants to represent him. This situation falls within the rule that, where "the nature of the case admits of explanation or contradiction, and enough has been proven against a party to warrant a reasonable conclusion against him in the absence of explanation or contradiction, and none is offered, the law warrants the adoption of the conclusion to which the proof tends," which in the case at bar was that Pross was either a nonparticipant or a nonexistent person. *Roberts v. People, supra.* See, also, *Shemwell v. People,* 62 Colo. 146, 161 Pac. 157. Counsel further assert that, at most, the vice of defendants was in concealing the real facts from the county commissioners, and upon the premise that nondisclosure is not a pretense warranting conviction, even though it appears that had the disclosure been made it would have deterred the victim from parting with his money *(Stumpff v. People,* 51 Colo. 202, 117 Pac. 134), they argue that the verdict cannot lawfully be upheld. We do not believe this principle applicable here. The negative conduct of the defendants shown in the last cited case is in no manner comparable with the positive course of affirmative falsity pursued by defendants in attaining their ends in the transaction at bar.

■ It also is obvious that the questions of law pertaining to the extent of the authority of the commissioners in selling tax sale certificates and the rights of the purchasers thereof in legitimate transactions, argued at length by counsel for defendants, are not invokable by persons who have proceeded by false and illegal processes.

■ It next is contended that reversible error arose from the appointment of elisors to summon prospective jurors on open venires. Before a jury was called defendants, as permitted by section 121, chapter 45, '35 C.S.A., filed a motion to disqualify the sheriff of Huer-

fano county and his deputies from serving process, summoning jurors or otherwise participating further in the case. This *motion was granted*, as is mandatorily required where there is a compliance with the statute. *Kelliher v. People,* 71 Colo. 202, 205 Pac. 274. In such circumstances the duties of the sheriff in the particulars here involved, devolve upon the county coroner. Sections 120, 121, chapter 45, '35 C.S.A. Thereafter, the district attorney filed a verified motion to disqualify the coroner, making as to him substantially the same allegations required to disqualify the sheriff under section 12, supra. The court granted the motion of the district attorney and appointed two citizens as elisors to summon jurors. Several persons so summoned sat on the jury. Defendants first assert that since no statute provides for the disqualification of the coroner or the appointment of elisors, the court acted without authority, and further argue that if *disqualification of the coroner* for interest is to be allowed, that it must be upon allegations of ultimate fact and not upon conclusions as is permitted by the statute when directed toward the sheriff. Both of these questions are resolved adversely to the contention of defendants in *Daugherty v. People,* 78 Colo. 43, 239 Pac. 14, wherein we state: "Defendant also on the same day filed his affidavit disqualifying the coroner. It is urged by the Attorney General that the statute does not provide for the disqualification of the coroner. While this is true, nevertheless *we think the coroner may be disqualified in the same manner as the sheriff.* It is quite essential, in the administration of justice that jurors should be summoned by persons who are absolutely fair and impartial and not in any wise prejudiced against a party to the proceedings. * * * When affidavits are filed showing disqualification of either sheriff or coroner, it is the duty of the court to act, without counter affidavits, and declare the officer disqualified. In *Toenniges v. Drake,* 7 Colo. 471, 4 Pac. 790, this court held that *'if the coroner was partial or*

*not indifferent in the matter, two persons called elisors, against whom no cause of challenge existed, were named by the court to execute the process.'* " It also is likely, under another holding in the Daugherty case, that by failing to move to quash the venire directed to the elisors or to dismiss the jurors summoned by them, defendants waived the right of objection on this point. See, also, *Hoffman v. People,* 72 Colo. 552, 212 Pac. 848, and *Peck v. Farnham,* 24 Colo. 141, 49 Pac. 364.

██ The next objection, grounded upon the court's refusal to require the district attorney to elect at the beginning of the trial upon which count of the indictment he would proceed, is without merit. Such motions always are directed to the discretion of the court (*Sarno v. People,* 74 Colo. 528, 223 Pac. 41; *Johnson v. People,* 79 Colo. 439, 246 Pac. 202; *Roberts v. People,* 11 Colo. 213, 17 Pac. 637) and no abuse thereof appears here, since, as has been stated above, all eight counts of the indictment as returned were based upon the facts surrounding the single transaction under consideration, and at the conclusion of the people's evidence the district attorney, of his own volition, *did* elect to proceed on count six alone.

██ By separate verdicts the jury found each of the defendants "guilty of obtaining money by false pretenses in manner and form as charged in the indictment." Citing that the statute under which the prosecution is had, section 305, supra, provides that, "Where the property obtained is over the value of twenty dollars" the party so offending shall be imprisoned in the penitentiary, but "Where the value of the property obtained is twenty dollars or less" a convicted defendant shall be punished by fine or imprisonment in the county jail or both, counsel for defendants contend that the verdicts are fatally defective in failing to state the value of the property taken. Material as it might be in some situations, this objection is unavailing here. As the indictment discloses and the instructions informed the jury,

defendants were charged with obtaining $140.62 lawful money of the United States and they were convicted of the offense "in manner and form as charged in the indictment." Furthermore, the amount of the money—the criterion of all value—obtained by defendants, if guilty, was not a controverted question in the trial of the cause. Considering these factors, the verdict became as certain as to the amount of money obtained as if the amount was stated in the verdict in express terms. While generally, there is some conflict in the authorities on this point, the view we have expressed is the law in Colorado. *Mason v. People*, 2 Colo. 373. Of the many cases from other jurisdictions in accord, see, *State v. Bohle*, 182 Mo. 58, 81 S.W. 179; *People v. Millan*, 106 Cal. 320, 39 Pac. 605, and *People v. Hines*, 5 Cal. App. 122, 89 Pac. 858. A collection of the reported adjudications on this subject may be found in 79 A.L.R., 1181. Of the general result of such, the annotator, speaking particularly of statutes defining larceny and embezzlement containing provisions analagous to those under consideration, states: "In the larger number of cases in which the question has arisen, it has been held that a general verdict such as 'guilty,' 'guilty as charged in the indictment,' 'guilty of grand larceny,' 'guilty in the second degree,' etc., is sufficient, without a finding of the value of the stolen property, to support a conviction of larceny or embezzlement, since where, under proper instructions from the trial court, the jury has found such general verdict, it can, by reference to the indictment and instructions, be made certain as to what value the jury must have found. These cases base their results on such principle even though the degree of the crime or the place and form of punishment depend on the value of the property."

It is next argued that the court erred in refusing to give defendants' tendered Instructions Nos. 4 and 5, which are as follows: "Instruction No. 4. The Court instructs the jury that there is no direct evidence in this

case of the commission of a crime, by either defendants; that all the evidence introduced herein is circumstantial in its nature." "Instruction No. 5. Where the state relies solely upon circumstantial evidence for a conviction, the circumstances must be such as to not only be consistent with defendants' guilt, but also to exclude every reasonable hypothesis of their innocence." In this case no necessity arose for giving the first of these instructions, since the ultimate question was not whether the evidence was direct or circumstantial, but whether it satisfied the minds of the jury of the guilt of defendants beyond a reasonable doubt (*Beeler v. People,* 58 Colo. 451, 146 Pac. 762), since this crime may be established by circumstantial evidence alone. *Ruff v. People,* 78 Colo. 474, 242 Pac. 633; *Conferti v. People,* 79 Colo. 666, 247 Pac. 1065, and *Elliott v. People,* 56 Colo. 236, 138 Pac. 39. In given Instruction No. 18 the court defined circumstantial evidence and informed the jury: "If these facts and circumstances are sufficient to satisfy the jury of the guilt of the defendants, or either of them, beyond a reasonable doubt, then such proof is sufficient to authorize you in finding a verdict of guilty as to such of the defendants as the jury are so satisfied beyond a reasonable doubt, from the evidence, are guilty."

Proper instructions (Nos. 19 and 20) as to the doctrine of reasonable doubt also were given. While it would have been proper, in addition, to have given an instruction of the character of tendered Instruction No. 5 the failure to do so, in view of the giving of Instructions Nos. 18, 19 and 20, supra, amounted only to nondirection and not misdirection. Such an omission does not constitute reversible error where there was sufficient evidence to authorize submission of the case to the jury as was the situation here. *Smaldone v. People,* 103 Colo. 498, 88 P. (2d) 103, and *Solander v. People,* 2 Colo. 48. Further, it may be questioned, although in the light of the foregoing it is unnecessary for us to consider such, whether the last clause of tendered Instruction No. 5,

"but also to *exclude* every reasonable hypothesis of their innocence," does not exceed the established criterion that circumstantial evidence is sufficient to convict where inconsistent with any reasonable hypothesis of the innocence of the defendants. See, *Beeler v. People, supra; Conferti v. People, supra,* and *Cohen v. People,* 106 Colo. 245, 103 P. (2d) 479.

 In the course of the trial evidence of a number of transactions similar to the one upon which the indictment was based and with which "C. H. Pross" was connected and in which the testimony showed the signature "C. H. Pross" was written upon occasion by one of the defendants, was admitted for the stated purpose of showing the intent, motive, design and system of the defendants in connection with the acts charged in the indictment. Patently, particularly when followed by proper instructions of limitation, such evidence is admissible. Among the many cases so pronouncing are: *Clarke v. People,* 53 Colo. 214, 125 Pac. 113; *Elliott v. People, supra; Myers v. People,* 65 Colo. 450, 177 Pac. 145, and *Roll v. People,* 78 Colo. 589, 243 Pac. 641. See, also, 80 A.L.R. 1306, 1307. We fail to perceive any legitimate basis for admission in evidence of Exhibits "V" and "W", which were petitions to purchase tax sale certificates, purportedly signed by one Samuels and one Allenstein. It would seem that Exhibit "V" was once rejected for immateriality. However, as the histories of the transactions surrounding these exhibits were never developed and neither was connected with defendants, we believe no prejudice to them arose from the reception.

 By Instruction No. 17 the jury was informed that evidence of "separate and other *offenses*" had been admitted for the purposes above stated and could be considered by them for no other purpose, and that "The defendants cannot be tried for, nor convicted of, any offense not charged in the indictment." Defendants claim that by use of the word "offenses" as first em-

ployed in the instruction the court advised the jury that the transactions referred to, which generally were similar to the one charged, were crimes and, hence, in effect, said as a matter of law that defendants were guilty of the latter. While in view of the context, the use of the word "transactions" instead of "offenses" might have been preferable, the clarity of the remainder of the instruction convinces us that the jury could not have been misled nor the defendants injured thereby.

Finally, defendants assert that the district attorney was guilty of such gross misconduct in his closing argument to the jury as to necessitate a new trial. No verbatim report of what the district attorney said appears in the record and apparently his argument was not taken down by the court reporter. Neither does it appear that the defendants, during the course of the argument made objection thereto. The question was first raised in the motion for new trial when defendants filed nine affidavits, including those of the defendants, purporting to set forth in substance and effect what was said to be the objectionable matter in the district attorney's closing argument. These affidavits were disputed by counter-affidavits of four persons filed by the people. The trial court, who heard the argument of the district attorney and also considered the affidavits, overruled the motion for new trial. All presumption of regularity must be accorded this ruling. In this state of the record it is manifestly impossible for us to determine what actually transpired at the trial in this connection or to pass upon the propriety thereof.

We have carefully examined other assignments of error presented by counsel for defendants, and are convinced that none of them is serious or warrants detailed discussion.

The judgment is affirmed.

MR. JUSTICE HILLIARD, not having heard oral argument, does not participate.