## No. 14,907.

JOHNSON ET AL. *v.* THE PEOPLE.

(133 P. [2d] 789)

Decided January 18, 1943.

Mr. ROMILLY FOOTE, Mr. GEORGE H. BLICKHAHN, Mr. CHARLES A. MURDOCK; Mr. CHARLES T. MAHONEY, for plaintiffs in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. MCAULIFFE, Assistant, Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

Mr. Chief Justice Young delivered the opinion of the court.

In the district court of Huerfano county, Clyde M. Johnson and Felix Mestas were found guilty by a jury of the crime of obtaining money by false pretenses from the county, and upon such verdict the court entered its judgment sentencing each to a term in the penitentiary. To reverse this judgment they have sued out a writ of error in this court.

The indictment on which defendants were tried contained six counts, charging: 1. Conspiracy to obtain money from the county by means of a confidence game; 2. that money was obtained from the county by means of a confidence game; 3. conspiracy to obtain money from the county by false pretenses; 4. that money was obtained from the county by false pretenses; 5. conspiracy to embezzle money from the county, and 6. embezzlement of money from the county.

All the counts in the indictment were predicated on a single transaction by which it was charged, in the various ways indicated, that Johnson and Mestas obtained twenty-two dollars of the county's money out of the welfare fund of the county by means of a false and fraudulent relief order issued by Johnson as commissioner, to Mestas.

At the close of the people's evidence, the District Attorney dismissed all counts of the indictment, save two: the third, charging conspiracy to obtain money by false pretenses, and the fourth, charging the obtaining of money by false pretenses. Defendants moved the court to require the people to elect upon which count they intended to rely for a conviction, but the court denied the motion, to which ruling an exception was duly reserved. At the close of the introduction of defendants' evidence the District Attorney elected to rely upon the fourth count alone, which charged the crime of obtaining money by false pretenses, and the third and only re-

maining count, charging conspiracy to obtain money by false pretenses, was dismissed.

Before trial a motion to quash the indictment was filed directed to all counts, but since there was conviction only on the fourth, we consider the motion only as it applied to that count. The ground of the motion is, as to this count, that it is "so vague and general in its terms that it fails to charge the commission of any crime, or the violation of any public law, on the part of the defendants, or either of them."

The charge in the fourth count was as follows:

"That Clyde M. Johnson and Felix Mestas did, on or about January 17, 1938, in Huerfano County, Colorado, designing and intending, falsely, fraudulently, designedly, knowingly, corruptly and wilfully, to deprive the County of Huerfano, State of Colorado, and the State of Colorado, of Welfare funds in the sum of $22.00, lawful money of the United States of America, did then and there, knowingly, falsely, unlawfully, feloniously, designedly, fraudulently and wilfully cause to be presented to the County of Huerfano, State of Colorado, a certain Huerfano County State Relief Fund order and instrument, made payable to the purported order of R. Lovato in the sum of $22.00, and bearing the purported signature of E. Kastner, which said order is in words, figures and of the tenor as follows, to-wit:

Walsenburg, Colo., 1-17, 1938 No............

Huerfano County Special State Relief Fund.

Please deliver to R. Lovato $22.00 Merchant Palace Gro. Twenty-two and no/100 Dollars in merchandise and charge to the Huerfano County Special Relief Fund.

Good for...............................

Signed E. Kastner.

endorsed on the back thereof: R. Lovato.

and the said defendants did then and there represent, and cause to be represented to the County of Huerfano and State of Colorado, that the said order was issued and delivered to R. Lovato for the purpose of furnish-

ing and giving said R. Lovato county aid and relief from the Welfare and Relief fund aforesaid, and through the administration of said Relief fund, when, in truth and in fact, the said defendants, and each of them, well knew that said order was not delivered to said R. Lovato, and was not issued for the use and benefit of R. Lovato and was not intended for the use and benefit of R. Lovato, but was, in truth and in fact, fraudulently and falsely made, executed and delivered by the defendant Clyde M. Johnson to the said defendant Felix Mestas, and that said defendant Felix Mestas did fraudulently receive the said Welfare and Relief order and did fraudulently and falsely receive the sum of $22.00 in goods, wares and merchandise, or lawful money of the United States of America and goods, wares and mer-. chandise of the total value of $22.00, and that said order was executed and delivered for the purpose of defrauding and falsely procuring from the County of Huerfano, Colorado, and the State of Colorado Welfare funds in the sum of $22.00 by means and use of false pretenses, and that said Welfare fund of the county of Huerfano, and State of Colorado by these false and fraudulent pretenses was defrauded in said sum, * * * ."

In *Tracy v. People*, 65 Colo. 226, 176 Pac. 280, a case in which the sufficiency of an information charging the crime of false pretenses was under consideration, we said:

"These informations are good if defendant is advised with sufficient certainty of the offense with which he is charged, and if the offense is so clearly set out that judgment may be passed thereon. The essentials of an indictment or information for obtaining property by false pretenses are thus enumerated in 11 R.C.L. 857:

" 'An indictment for obtaining property by false pretenses is sufficient if the language used is such that it designates the person charged and indicates to him the crime of which he is accused. It must, however, have that degree of certainty and precision which will fully

inform the accused of the special character of the charge against which he is called on to defend, and will enable the court to determine whether the facts alleged on the face of the indictment are sufficient in the contemplation of law to constitute a crime, so that the record may stand as a protection against further prosecution for the same alleged offense. It must aver all the material elements of the offense, and hence must show what the false pretenses were; that they were made or authorized by the defendant; that they were false and fraudulent; and deceived the prosecutor; and what was obtained by or under them.' "

While the count here under consideration, upon which defendants were convicted, is far from being a model charge of the crime of false pretenses, and lacks that orderly sequence of statement of the elements of the offense which should characterize an indictment, we are of the opinion that the count contains sufficient allegations, at least as against the ground set forth in the motion to quash—which is all we consider—under the test of sufficiency set forth in *Tracy v. People, supra,* and we decline to hold that the trial court was in error in denying the motion.

In the indictment the defendants are named. It is alleged that they designed and intended to deprive the county of Huerfano of welfare funds in the amount of twenty-two dollars lawful money of the United States of America. It is further alleged that they caused to be presented to the county officials of Huerfano a certain relief order, which is set out in haec verba in the indictment. It is also alleged that it purported to be signed by E. Kastner, and to be payable to **R. Lovato,** and that it was "endorsed on the back thereof, R. Lovato." It is further set out that defendants then and there caused to be represented to Huerfano county that the order was issued and delivered to R. Lovato for the purpose of furnishing and giving said R. Lovato county aid and relief from the welfare and relief fund and

through the administration of that fund. It is also alleged that the order, set forth in haec verba, and alleged to bear the purported signature of E. Kastner as maker, was fraudulently and falsely made, by Johnson rather than Kastner. It is alleged also that the order purportedly made payable to R. Lovato and endorsed "R. Lovato" on the back thereof (either by R. Lovato or some other person), was fraudulently made and intended for Mestas and was fraudulently received by Mestas and that he, Mestas, received twenty-two dollars in money or goods that purportedly were for the relief of R. Lovato. It is also alleged that by means of the false pretenses, money to the amount of twenty-two dollars was obtained from the welfare fund of the county. The indictment, as we have stated, is not a model of good pleading, but, on the whole, we think it contains sufficient allegations of the elements of the crime of obtaining money by false pretenses to sufficiently advise defendants so that they could not have been misled, and the transaction is set forth in a sufficiently definite manner so that an acquittal or conviction on the charge alleged would bar any future prosecution based upon the same transaction.

In their argument, counsel for defendants stress as objections that the indictment does not allege: (1) That the representations were false; (2) that the county was deceived, and (3) that the county relied thereon. From our analysis of the indictment, we think it appears that false representations were charged. It is not necessary, in order to support a criminal charge, that all false representations be express, they may be made by implication. *Martins v. State,* 17 Wyo. 319, 98 Pac. 709, 22 L.R.A. (N.S.) 645; 22 Am. Jur. 455, §§18, 19. Certain express false representations are charged as entering into the scheme to obtain the county's money, such as the charge that the order purporting to be issued by E. Kastner for the relief of R. Lovato, was in fact issued by Johnson to enable Mestas to obtain

county money. Implied in the issuance in apparently regular manner of a relief order is the representation that the person to whom it was issued was in need of, and entitled to, relief, and that the order was to supply such relief. If false representations are made, such as were alleged in this case, and thereby an appearance of regularity is created such that if the matters appearing were true, the disbursement of the county's funds would be proper; and if in regular manner the officials performed the acts necessary and proper for a disbursement of county money, whether they or any of them were in fact deceived or performed the official acts requisite to such disbursement with full knowledge that the appearance of regularity was falsely and fraudulently created, the county, as a governmental agency or branch of the government, was in law deceived; and when the money was disbursed in regular course this was proof of the reliance of the county on the false and fraudulent representations that created the false appearance of regularity. Otherwise, if all officials concerned in the disbursement of county moneys were parties to the plan to defraud the county by false pretenses, the scheme would fail because no one of the officials in the chain was in fact deceived and acted in reliance on the falsely created appearance of truth and regularity. Of course, the ultimate fact of the deception of the county and its reliance thereon would be shown also if it appeared that any official, whose acts were requisite to a regular and proper disbursement, was in fact deceived and did in fact rely upon false representations in performing an official act which, had he been in possession of the true facts, he would not have performed. To state the matter briefly, if an official charged with performing an act in the chain of acts necessary to a regular disbursement of county moneys is deceived and relies upon an apparent, but falsely and fraudulently created, situation of fact, the county itself, as a governmental entity, is deceived and relies upon such

situation in fact; but even if all such officials are parties to the fraudulent scheme creating a false appearance of regularity and money is obtained through the regular channels of disbursement, the county, in law, is none the less deceived and none the less relies on the falsely created situation. We hold that the three objections to the sufficiency of the indictment urged in defendants' brief are untenable.

We have devoted a considerable portion of this opinion to the sufficiency of the indictment, even though we find that the case must be reversed on other grounds, in order that, in the event of a subsequent trial, this matter shall not be the subject of further controversy.

In their brief, defendants set out 76 assignments of error which they argue under 17 headings. In so far as we deem it necessary to refer to the issues raised by the assignments, we shall consider them under such headings. Those dealing with the disqualification of the sheriff and coroner and the appointment of elisors, we deem covered sufficiently by our recently announced opinion in *Montez v. People,* 110 Colo. 208, 132 P. (2d) 970, our holding in that case being authoritatively adverse to defendants' contentions here.

 We find no error in the court's denial of the motion for a bill of particulars. The indictment sufficiently advised defendants of the charge they were called upon to meet. Neither do we find error in the permitting or sustaining of challenges to jurors by the people which plaintiffs in error insist the record discloses were prejudicial to them. It is to be observed on this point that the record does not disclose that defendants had exhausted the remedy available to them in such a case by exercising all their peremptory challenges permitted under the law. In *Minich v. People,* 8 Colo. 440, 9 Pac. 4, we held that any error resulting from an erroneous refusal of the trial court to sustain a challenge for cause, is harmless where the defendant exercises a peremptory challenge and eliminates the objec-

tional juror, and subsequently accepts the jury without having exercised all of his peremptory challenges. The excusing of jurors on challenge for cause rests in the sound discretion of the court, and our examination of the record in the present case does not disclose any abuse of discretion.

It is strenuously argued by defendants that the court committed prejudicial error in refusing to require the people, at the close of their case to elect upon which of the two remaining counts, namely, the count charging conspiracy to commit the crime of obtaining money by false pretenses, or that charging the obtaining of money by false pretenses, they would rely for a conviction. Ordinarily, the granting of the motion would be the better procedure; but since only one count remains, in event of a retrial this question will not again arise, and we need not, and do not, determine whether the error, if such it was, was prejudicial to defendants in this trial.

Defendants particularly objected to the evidence of the people's witness, Mrs. George, who testified that Mestas, when cashing the warrant on which the charge is based, and others, asked for one-half in money and gave as a reason therefor that this was necessary in order to give Johnson his portion. The objection was based upon the ground that the conversation between the witness and Mestas was out of the presence of Johnson; that no common scheme, plan or conspiracy had been shown, and that such statements did not bind Johnson. To this objection the District Attorney replied that he desired to show a conspiracy by the witness, whereupon the court overruled the objection. The District Attorney apparently did not think he then had proved a conspiracy, otherwise, with the objection pointing out that it was inadmissible as an act or statement by one conspirator in furtherance of the conspiracy, because no conspiracy had been proved, he surely would have taken the position that he had established it, rather than the position that he offered the evidence

to prove a conspiracy. Other than the insistence of Mestas that he receive one-half of the payment in cash which was to go to Johnson, no testimony was adduced from the witness that tended to prove the fact of a conspiracy or a common scheme or plan to defraud the county. The evidence was not offered on the charge of obtaining money by false pretenses, nor is it argued, nor are we able to see, that it was relevant to prove such offense. The false pretenses set forth in the indictment were that R. Lovato was in need and that the order was for R. Lovato, when in fact it was to enable Mestas wrongfully to receive money from the county; that Mestas fraudulently received the order, goods and money thereunder, and that the county thus was defrauded. It is immaterial what Mestas said he intended to do with the money. When he received money or merchandise, under the charge as laid, the crime was complete. It was not shown as a fact that Johnson received any money from the order. If it had been so shown, that would have been competent evidence against him to prove his criminal intent and also the falsity of the representations implied in issuing the orders, but the mere statement of Mestas that he intended to give it to Johnson is not evidence that Johnson in fact received it.

■ The prejudicial effect of admitting the testimony of Mrs. George is apparent, considered in connection with the testimony of Mrs. Kastner, the county relief director, a witness for defendants, that it was not then required by the welfare department that the orders given relief clients be filled in merchandise and the bill of merchandise reconciled in value with the amount of the order. She testified that such reconciling of the order and the merchandise received was not required until October, 1939, more than a year after the transaction covered by the indictment here under consideration. Mrs. Kastner testified also that the state welfare office had recommended that the counties pay relief in

cash. This testimony was not questioned and we cannot assume that an unlawful policy was recommended by the state welfare department. The jury should have been instructed concerning the law as to the receiving of merchandise or money on such orders. Defendants tendered an instruction to the effect that it was lawful for defendants to receive cash, or cash and merchandise on such orders, and the Attorney General does not controvert such as being the law. He merely states that this was not an issue, as the state made no such contention. If it was not an issue, the District Attorney should have limited his proof to the ultimate fact that by virtue of the order eleven dollars in money and eleven dollars in value of goods was received by Mestas, and, not having done so, defendants were entitled to an instruction that would not leave the jury to speculate as to whether in so doing Mestas was acting unlawfully, and possibly to conclude by reason of the failure to give a proper instruction on the point, that he was acting unlawfully, and criminally, in so doing.

■ Defendants objected, and assign error also, to the admission of the statements of Mestas made to the sheriff in the absence of Johnson and long after the money was obtained, to the effect that he had given money to Johnson, but that it was no part of the relief fund. We fail to see the relevancy of such evidence to prove the charge laid in the indictment. It was error to admit it. It insinuates wrongful payment of money to Johnson and the jury may have so considered it. If it was not a wrongful payment, under no theory could it be material. The payment was not shown to have been for an improper purpose and we need not, and do not, determine the relevancy of the evidence concerning it to prove the issues if such had appeared.

■ Objection was made to the admission of Exhibit "K," a number of salary and mileage vouchers signed by Johnson for his salary, and compensation for mileage traveled by him, presumably in the discharge

of his duties as county commissioner. The exhibit was offered by the District Attorney and admitted for the purpose of showing Johnson's signature, for which the Attorney General concedes a letter, or any admitted or known signature would have served as well. Upon its being so limited, defendants' counsel withdrew his objection and it was admitted for that purpose. If the alleged purpose of the people in offering Exhibit "K" was merely to show a true signature written by Johnson, it taxes our credulity to believe that it is purely a coincidence that such salary and mileage vouchers were used only for that purpose when Arthur L. Baldwin, the accountant who made an audit of the county books was called by the District Attorney to testify to the wholly irrelevant matter that Johnson's salary was $100.00 per month; that during 1938 he drew compensation for mileage amounting to $1,755.02, and for 1939 an amount in the sum of $1,818.40, all over the objection of defendants. All but seventeen days of the period of 1938 and 1939 was after the alleged offense was committed on January 17, 1938. The court, over the objection that it had no probative value, said, "Just in reference to income, you may ask the question." If such evidence was admitted on the theory that the criminal quality of acts by which money was procured from the county was dependent in any manner upon whether the official alleged to have committed them had a monthly income of one hundred or two hundred fifty dollars, then this is certainly a novel legal theory, unsupported so far as we are advised, by precedent or logic. Unless it did so depend, we fail to see the relevancy of such evidence. Johnson's need was not alleged, nor an issue. No argument is required to show that evidence solemnly admitted by the court, that a man charged with defrauding the county of twenty-two dollars had also received eight cents per mile for traveling expenses to the amount of $150.00 per month, over a period of two years, would be prejudicial. The jury

may have considered, uninstructed as it was as to its bearing on the case, that the mileage allowance was for just riding around, and that its collection disclosed an intent on the part of the defendant to defraud the county, continuing two years after the crime charged was consummated. Subsequently, by cross-examination, defendants' counsel established that the amounts of mileage compensation and salary were lawful in the view of the accountant witness, and the court refused to strike the evidence on the ground that defendant's income is relevant under the Colorado decisions, none of which however, are called to our attention in the Attorney General's brief. If Johnson's income was relevant, though we fail to see how it was, the facts of the case are such that the jury should have been instructed in what manner it was to be considered as affecting defendant's guilt or innocence. Johnson's need of relief was not an issue, and Mestas' need, or lack of need of relief, is not established by showing his codefendant's income.

 Error is assigned to the giving of Instruction No. 15 which is as follows: "You are further instructed that there has been testimony submitted in this case as to separate and other offenses than the offense charged in the indictment filed herein. You are instructed that the said testimony is not to be considered by you as to the guilt or innocence of the defendants herein of the offense charged in the indictment, but is admitted for the purpose of showing intent, design or system, and is to be considered by you for no other purpose."

It is contended that the court should not have stated in effect that the charge in this indictment was an offense and that there were other offenses committed by defendants in addition to the one charged; in other words, that defendants were not only offenders, but continuing offenders. Whether the transactions admitted in evidence other than the one charged in the indictment were similar, and whether they showed a crim-

inal intent in the transaction made the basis of the charge, or that the latter was a part of a scheme or plan to defraud the county, was for the jury to determine from all the surrounding facts and circumstances of the case, and it was prejudicial error for the court to tell the jury that the other transactions were offenses as matter of law. The instruction then advises the jury that the commission of other offenses cannot be considered in determining the guilt or innocence of the defendants of the crime charged in the indictment. That was the very issue the jury was trying—the defendants' guilt or innocence. If the jury could not consider the other so-called offenses as evidence of guilt or innocence, they should not have been injected into the case. "But," the instruction concludes "[such evidence of other offenses], is admitted for the purpose of showing intent, design or system, and is to be considered by you for no other purpose." Having been told that it could not consider evidence of other offenses as bearing on defendants' guilt or innocence, the jury very well might infer that the court was advising them that defendants were men who committed such offenses frequently and who carried out such designs and plans generally, and therefore that they were to be distrusted and, of course, as the jury would conclude, in committing the acts alleged in the indictment they were running true to what the court said was their regular course of procedure. The prejudice resulting from a failure to clearly instruct a jury as to the effect to be given evidence of similar transactions is pointed out in *Jaynes v. People,* 44 Colo. 535, 99 Pac. 325, and we need not here reiterate the statements there made.

Error is assigned on the failure to submit to the jury the matter of the value of the goods and money obtained and the failure to return a verdict finding such value. What we said in the case of *Montez v. People, supra,* relative to a like situation, is applicable to this case, and in the light of our decision there, we simi-

larly resolve the issue raised by the assignment in the instant proceeding.

■ Error is assigned on the refusal of the court to give as asked, defendants' tendered Instructions numbers 2 and 3. The instructions as presented were slightly modified by the court and given as modified as numbers 8 and 7, respectively. We find no error in the refusal to give the instructions in the form tendered.

We have considered and commented upon numerous assigned errors, which plaintiffs in error contend require a reversal, but have not discussed all of them. Our failure to comment in this respect should not be regarded either as approval or disapproval of the contentions presented thereby. It is not probable in the event of a retrial that the same questions will arise again. If a retrial shall be had, we recommend to the court, and to counsel both for the people and defendants, that more careful consideration be given to the applicable law, to the relevancy and materiality of evidence offered and received, and to the limitation thereof, if such be required, than appears from the record to have been given their attention on the trial presently before us for review.

The judgment is reversed.

MR. JUSTICE BURKE and MR. JUSTICE JACKSON dissent.

MR. JUSTICE HILLIARD, not having heard oral argument, does not participate.