No. 15,477.

RANDAL v. THE PEOPLE.
(156 P. [2d] 125)

Decided January 29, 1945.

236

Mr. JOHN FITZPATRICK, Mr. GLENN LAUGHLIN, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*In Department.*

MR. CHIEF JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, Randal, hereinafter referred to as defendant, was convicted of involuntary manslaughter and sentenced to the county jail "for a period of not less than 360 days nor more than one year." He seeks reversal on a writ of error.

In the evening of August 26, 1943, Edgar W. Wence, a seventy-seven year old resident of Wiggins, Colorado, was taking his customary evening walk along the main

street of the town. At the same time, defendant, a farmer living in Adams county, was driving along the same street, and barely missed striking Wence with his car. The incident evidently vexed defendant who had been drinking, and he stopped the car, got out and started walking toward Wence, using abusive language as he approached him. Wence kept backing away across the road as defendant pressed closer. An argument ensued during which defendant struck Wence twice. Wence, who was carrying a cane, sought unsuccessfully to protect himself with it. The testimony of one of the witnesses regarding the altercation was as follows: "The old man was still backing away from him, and oh, it must have been fifteen feet, and Randal made a run at him and hit him an awful blow, and the old man fell his full length and laid on his left side and his head * * *." Another witness testified: "And Randal came up there and made just one great big swing—he made a round swing and struck him on the jaw and he hit the ground with a heavy crash." Wence lost consciousness immediately and never fully regained it. He later was removed to the home of a friend where he passed away about four o'clock the following morning.

Following the altercation, defendant reported the matter to the deputy sheriff at Wiggins who accompanied him to the scene of the affair. A crowd had gathered and defendant bullyingly addressed it, asking if any one was going to be a witness against him and stating he would "fight anyone who didn't like the way things had gone." A farmer by the name of Brethauer accepted this challenge and promptly administered a sound beating to defendant.

Defendant was subsequently arrested, and an information filed charging him with the crime of manslaughter, and alleging that he "did then and there feloniously kill and slay one Edgar W. Wence," etc. Defendant was arraigned and pleaded "not guilty."

The case was tried to a jury with the result above indicated.

While defendant assigns nine errors as grounds for reversal, his counsel argues them under the following propositions: 1. That defendant was not furnished with a complete list of the jurors. 2. That the court erred in refusing to grant the defendant the requested continuance. 3. That the court erred in permitting the introduction of improper testimony concerning the altercation between defendant and one Brethauer because it was not part of the res gestae. 4. That no medical testimony was introduced to show that the blow alleged to have been struck by defendant caused the death of the deceased. 5. That the court erred in the matter of instructing the jury.

■■ 1. As to the first proposition, that defendant was not furnished with a list of the jurors prior to his arraignment in compliance with section 452, chapter 48, '35 C.S.A., the record does show that he was not given a list of the jurors before his arraignment, but that he was furnished with it immediately thereafter, or almost contemporaneously therewith, and at least ten days prior to the trial of the cause. Defendant was arraigned on September 14, 1943. The jury list had been drawn some time previously, which list contained the names of thirty men drawn in the regular way. It was during the harvest season and it was deemed advisable to excuse a number of jurors. The court, anticipating that more jurors would be needed, issued an order on September 20, for ten additional jurors to be drawn in the regular manner. A copy of this list was mailed to defendant's attorney. On the morning of the trial, September 24, it developed that both panels had been exhausted, either through excuse or challenge, and the court then issued an order for an open venire for eight more men and ordered the sheriff to procure that number. It appears that both the sheriff and the coroner were witnesses for the people, and objection was made

to service by the sheriff. However, no affidavit of disqualification was filed, as required by section 121, chapter 45, '35 C.S.A., and no request was made for service by an elisor; consequently objection on this point was waived. *Montez v. People,* 110 Colo. 208, 218, 132 P. (2d) 970. It may be noted, too, that the record does not disclose that defendant had exhausted all of his peremptory challenges and that he accepted the jury "subject to the objection on record." The objection on record went to the failure of the court to give the defendant the jury list before arraignment. Upon this proposition we have held: "The judgment will not be reversed on that account, unless the accused are able to show that they were prejudiced on account of the failure to receive the list previous to arraignment." *Imboden v. People,* 40 Colo. 142, 90 Pac. 608. In the case at bar where defendant received the jury list almost contemporaneously with his arraignment, ten days before the trial, we think no prejudice is shown.

2. Defense counsel complains of the court's refusal to grant a continuance of four days from September 14th, the date of arraignment, to September 18th, because, he says, he did not have sufficient time to make an investigation of the jury. The court did grant a continuance from ten o'clock in the morning to two o'clock in the afternoon on the 14th, to study the information and file any objections, and counsel was given ten days thereafter to prepare for trial. No motions or objections were filed. Under the circumstances we think the trial court did not abuse its discretion in the matter. See, *Epley v. People,* 51 Colo. 501, 119 Pac. 155, and cases therein cited; also, *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081; *Sharp v. People,* 90 Colo. 356, 9 P. (2d) 483.

3. There was no error committed by the trial court in receiving evidence of the affray between defendant and Brethauer. In the first place, defense

counsel, following an argument on the assertion that the testimony did not relate to a matter that was part of the res gestae, stated in open court: "I am willing for it all to go." It further appears that defendant's wife in her testimony related the whole story as a part of defendant's case. This is a complete answer. *Moya v. People,* 88 Colo. 139, 293 Pac. 335.

4. As to the sufficiency of the evidence, defense counsel conceded in his argument to the trial court that the evidence would possibly support a verdict for involuntary manslaughter. The jury returned such a verdict. The case of *McAndrews v. People,* 71 Colo. 542, 208 Pac. 486, relied upon by defendant's counsel, has no application to a case where the assault is committed "upon a person enfeebled by old age," as was the case here. We think the evidence of the cause of death was sufficient to warrant the submission of the case to the jury.

5. As to the instructions, we have carefully considered them, and are satisfied that they correctly and adequately stated the law applicable to the case. We think defendant was accorded a fair trial.

The judgment is affirmed.

MR. JUSTICE BURKE and MR. JUSTICE STONE concur.