REX BRIGHT AND DAYE CALVERT, APPELLANTS, *v.* SHERIFF, WASHOE COUNTY, NEVADA, RESPONDENT.

No. 7613

April 19, 1974                                    521 P.2d 371

*Legarza, Lee & Barengo,* of Reno, for Appellants.

*Robert List,* Attorney General, Carson City; *Robert E. Rose,* District Attorney, and *Thomas C. McNally,* Deputy District Attorney, Washoe County, for Respondent.

---

## OPINION

*Per Curiam:*

Appellants were indicted for the crime of obtaining money under false pretenses (NRS 205.380). In a pretrial habeas proceeding in the district court they contended the evidence presented to the grand jury was insufficient to establish probable cause to hold them for trial. The district court denied habeas and this appeal was perfected.

The record reflects that Alfred J. Banford, together with appellant Calvert and others, formed a corporation, Silver Pine Homes, Inc. Its stated purpose: the building of homes. Banford's responsibility was to acquire the land; Calvert's: to handle the construction. Appellant Bright was subsequently brought into the operation; his function: plumbing.

Bright and Calvert then, secretly and without Banford's knowledge, set up a fictitious company, A & X Building Supply. All plumbing supplies for the Silver Pines construction were acquired through A & X; all A & X delivery slips and invoices were submitted over the signature of J. B. King, a nonexistent person; they were approved by either Bright or Calvert and passed on as bona fide bills, to Banford, who caused them to be paid with Silver Pine funds.

Bright, using his personal checks, purchased the various supplies at the distributor/contractor price, and through the A & X conduit, charged Silver Pines an average of at least 100 percent more than the original purchase price. During the 14-month period involved Silver Pines paid some $30,000.00 more than its cost would have been, absent the scheme.

Our statute makes it a crime to obtain money by false pretenses.[1] Elements of the crime are: (1) intent to defraud; (2) a false representation; (3) reliance on that representation; and, (4) that the victim be defrauded. The single issue before us is whether the record contains evidence of the second element, a false representation.

Appellant's entire argument is directed to the fact that there was no evidence that they made *direct* false representations to Silver Pines (and Banford); therefore, they suggest that absent such proof they cannot be subjected to trial. The contention is without merit. Whether a false representation is made in a *direct* manner, or through the subterfuge of *concealment or non-disclosure,* is neither determinative of, nor critical to, the issue of whether or not the crime was committed.

A false pretense may be defined as a representation of some fact or circumstance which is not true and is calculated to mislead. The representation may be *implied from conduct,* or may consist of *concealment or non-disclosure* where there is a duty to speak. A false pretense may consist of any act, word, symbol or token calculated and intended to deceive. It may be made either expressly, or by implication.

Many cases have followed this very broad definition of false representations. Generally, any words or conduct which create *any false circumstance* will satisfy the statute. Although no cases were cited which involved the exact scheme presented in this case, and we found none, many remarkably analogous schemes have been held to constitute the crime. Illustrative is Montez v. People, 132 P.2d 970 (Colo. 1942), where defendants, deputy county treasurers, learned through their official capacity that a delinquent taxpayer was seeking redemption of a tax sale certificate. Under a fictitious name they requested assignment of the certificate at a reduced price. The county commissioners, unaware of the impending redemption, granted the assignment for one-half the amount the county would have received had it waited for the redemption. The taxpayer then

---

[1]205.380 reads in part: "Every person who shall knowingly and designedly, by any false pretense or pretenses, obtain from any other person or persons any chose in action, money, goods, wares, chattels, effects or other valuable thing, with intent to cheat or defraud any person or persons of the same, is a cheat, and on conviction shall be imprisoned . . ."

paid the full redemption amount to defendants, "as a result of which the loss to the county of the difference was as definite and tangible as if the money had been removed from the cash drawer in the treasurer's office." 132 P.2d at 974.

In State v. Aiken, 254 P.2d 264 (Kan. 1953), a conviction was sustained where an insurance solicitor represented to insureds that the annual premium for a certain policy was $68.50; he collected that amount and kept the difference between such amount and the actual premium of $33. A conviction was upheld in Thompson v. State, 19 S.E.2d 777 (Ga. 1942), where defendant, an inspector in the city water department altered the consumer's water meter in order to reduce the water bill, and then received, from the consumer, one-half the amount saved. People v. Baird, 286 P.2d 832 (Cal.App. 1955), upheld conviction of a defendant who induced the prosecuting witness to enter into a joint venture for the purchase of surplus machine gun cases; defendant produced a purported copy of a bid form showing the cost to be 12½ ¢ each. In fact the cost was only 5¾ ¢ each. A conviction was also affirmed in People v. Carpenter, 297 P.2d 498 (Cal.App. 1956), where a theater employee, who was supposed to draw a ticket at random, palmed the ticket of a confederate and pretended it to be the one drawn from a container.

The cited cases are similar in that they involve a false circumstance· or fact which has been created to mislead. The method for the creation and execution of the fraudulent scheme may be by express representations: *Aiken, supra, Baird; supra;* by conduct: *Thompson, supra, Carpenter, supra;* or indirectly and by non-disclosure: *Montez, supra.*

In the present case, appellants submitted a false claim. They would have been criminally liable if they had overcharged by including items on the vouchers and invoices that had not actually been purchased. State v. Zeek, 199 A. 713 (N.J. 1938). If they had overcharged by expressly misrepresenting the cost that the corporation had paid for an item, they would be criminally liable: *Aiken, supra; Baird, supra.* They are just as criminally responsible where the same result is reached *indirectly,* through the representation that A & X was a bona fide plumbing supply business and that J. B. King had submitted vouchers from A & X for payment. *Montez, supra.*

The order of the trial court is affirmed.