**G.K. LAS VEGAS LIMITED PARTNERSHIP, a California limited partnership, Plaintiff,**

v.

**SIMON PROPERTY GROUP, INC., a Delaware corporation; Simon Property Group, L.P., a Delaware limited partnership; M.S. Management Associates, Inc., a Delaware corporation doing business as Simon Management Company; SDG Forum Associates**

---

Limited Partnership, a Delaware limited partnership; SPG Forum Developers, LLC, a Delaware limited liability company; and David Simon, Melvin Simon, and Herbert Simon, Defendants.

No. CVS04–1199DAE–GWF.

United States District Court, D. Nevada.

Sept. 29, 2006.

See also, 460 F.Supp.2d 1246.

D. Heath Bailey, Rooker Mohrman
Rawlins & Bailey LLP, Henderson, for
M.S. Management Associates, Inc., SDG

Forum Developers, LLC, SPG Forum Developers, LLC, Simon Property Group L.P., Simon Property Group, Inc., Defendants.

Dennis C. Brown, Munger Tolles & Olson., Los Angeles, CA, for M.S. Management Associates, Inc., SDG Forum Developers, LLC, SPG Forum Developers, LLC, Simon Property Group L.P., Simon Property Group, Inc., Defendants.

Ann M. Galvani, Boies Schiller & Flexner, LLP, Armonk, NY, for G.K. Las Vegas Limited Partnership, Plaintiff.

George M. Garvey, Munger Tolles & Olson, Los Angeles, CA, for M.S. Management Associates, Inc., SDG Forum Developers, LLC, SPG Forum Developers, LLC, Simon Property Group L.P., Simon Property Group, Inc., Defendants.

Christopher Green, Boies Schiller & Flexner, LLP, Armonk, NY, for G.K. Las Vegas Limited Partnership, Plaintiff.

Kirk B. Lenhard, Jones Vargas, Las Vegas, for David Simon, Herbert Simon, Melvin Simon, Defendants.

Rebecca G Lynch, Munger, Tolles & Olson LLP, San Francisco, CA, for M.S. Management Associates, Inc., SDG Forum Developers, LLC, SPG Forum Developers, LLC, Simon Property Group L.P., Simon Property Group, Inc., Defendants.

Daniel J. McAuliffe, Snell & Wilmer, Las Vegas, for G.K. Las Vegas Limited Partnership, Plaintiff.

Douglass A. Mitchell, Boies Schiller & Flexner, LLP, Las Vegas, for G.K. Las Vegas Limited Partnership, Plaintiff.

Christopher D. Moore, pro hac vice, Goodwin Proctor LLP, Boston, MA, for David Simon, Herbert Simon, Melvin Simon, Defendants.

Steve Morris, Morris Pickering Peterson & Trachok, Las Vegas, for G.K. Las Vegas Limited Partnership, Plaintiff.

Richard J. Pocker, Boies Schiller & Flexner, LLP, Las Vegas, for G.K. Las Vegas Limited Partnership, Plaintiff.

Michael D. Rawlins, Rooker Mohrman Rawlins & Bailey LLP, Henderson, for M.S. Management Associates, Inc., SDG Forum Developers, LLC, SPG Forum Developers, LLC, Simon Property Group L.P., Simon Property Group, Inc., Defendants.

C. Keith Rooker, Rooker Mohrman Rawlins & Bailey LLP, Henderson, for M.S. Management Associates, Inc., SDG Forum Developers, LLC, SPG Forum Developers, LLC, Simon Property Group L.P., Simon Property Group, Inc., Defendants.

James C. Rutten, Munger Tolles & Olson, Los Angeles, CA, for M.S. Management Associates, Inc., SDG Forum Developers, LLC, SPG Forum Developers, LLC, Simon Property Group L.P., Simon Property Group, Inc., Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART INSTITUTIONAL DEFENDANTS' MOTION TO STRIKE CLAIMS PREVIOUSLY DISMISSED WITH PREJUDICE, AND MOTION TO DISMISS OTHER CLAIMS OF THE SECOND AMENDED COMPLAINT AND DAVID SIMON'S MOTION TO DISMISS*

EZRA, District Judge.

Pursuant to Local Rule 78-2, the Court finds this matter suitable for disposition without a hearing. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART and DENIES IN PART Institutional Defendants' Motion to Strike Claims Previously Dismissed with Prejudice, and Motion to Dismiss Other Claims of the Second Amended Complaint (Document

# 102) and Defendant David Simon's Motion to Dismiss (Document # 103).[1]

## BACKGROUND

On November 7, 2005, Plaintiff G.K. Las Vegas Limited Partnership ("Plaintiff") filed a Second Amended Complaint ("SAC") against Defendants Simon Property Group, Inc. ("SPG"), Simon Property Group, L.P. ("SPG, LP"), M.S. Management Associates, Inc., SDG Forum Associates, L.P., SPG Forum Developers, LLC (collectively, "Institutional Defendants"), David Simon, Melvin Simon, and Herbert Simon (collectively, "Individual Defendants") alleging sixteen causes of action. Plaintiff alleges four causes of action under a Nevada racketeering statute, three causes of action for breach of a fiduciary duty, violation of Nevada and federal securities law, breach of contract, conversion, intentional interference with prospective economic advantage, negligent misrepresentation, accounting violations, and unjust enrichment.

The dispute stems from a partnership formed between Plaintiff's managing partner, Gordon Group Holdings, Ltd., and Sirum Associates, LP ("Sirum"), an entity created by Simon Property Group, LP. On February 6, 1990, the parties created the Forum Developers Limited Partnership ("FDLP") to develop and manage the Forum Shops, a Las Vegas Strip shopping complex adjacent to Caesars Palace. Plaintiff was the sole limited partner in FDLP, with a forty percent interest. Sirum was FDLP's managing general partner with a sixty percent interest. Plaintiff alleges that Sirum assigned its interest in the Forum Shops to SPG, LP in 1993.

The FDLP Agreement included a buy-sell provision, in which one party could purchase the shares of the other and vice versa. Essentially, if one party wished to either buy or sell his shares it was required to tender an offer to the other. The other party could either choose to sell his pro rata shares at the tender price, or conversely, could purchase the other party's shares. For example, if Plaintiff valued FDLP at $100 million and wanted to buy out Institutional Defendants, it could offer to purchase their sixty percent stake for $60 million. At this point, Institutional Defendants would have the choice of either selling its shares for $60 million or purchasing Plaintiff's forty percent stake for $40 million.[2]

Plaintiff also alleges that in addition to statutory and common law duties that Institutional Defendants assumed as managing general partner of the FDLP, it was also required by contract to: (1) make all cash distributions as permitted and/or required under the FDLP Agreement; (2) keep and separately maintain the books and records of FDLP and to make such books and records available for inspection, auditing, and copying subject to 10 days written notice; (3) to keep Plaintiff fully informed as the planning, development and construction related to the project and the property; (4) deal with other parties only upon terms that were not less favorable to the partnership than the customary terms with an unrelated third party in an arm's length transaction.

From its inception in 1992, the Forum Shops project was a huge success. By 1997, it had become the nation's most successful retail center with average annual

---

1. Individual Defendant David Simon also filed a Motion to Dismiss (Document # 103), and because his claims and arguments mirror those of Institutional Defendants, they are addressed in this Order.

2. The buy-sell provision required acceptance or a counteroffer from the non-offering party within thirty days and completion of the transaction 120 days thereafter.

sales of $1,200 per square foot. Due to its success, the parties planned an expansion to include Phase II of the Forum Shops. In 1996, Plaintiff and SPF, LP amended the original FDLP agreement to include Phase II ("Amended FDLP Agreement"). The amended agreement did not substantially change the buy-sell provision of the original agreement or the duties owed by Institutional Defendants. SPG, LP retained a sixty percent interest in Phase I, but acquired a fifty-five percent interest in Phase II. Plaintiff retained a forty percent interest in Phase I and Sheldon Gordon, the director of Gordon Group Holdings, Ltd., acquired a forty-five percent interest in Phase II.

Plaintiff states that SPG, LP assigned some of its interests in the Forum Shops to the Simon Debartolo Group, LP, which in turn assigned some of these interests to SDG Forum Associates, Limited Partnership. Plaintiff further states that Institutional Defendants eventually acquired the interests of both SDG Forum Associates, Limited Partnership and Simon Debartolo Group, LP. Sheldon Gordon subsequently assigned his interest to Plaintiff.

Plaintiff states that its relationship with Institutional and Individual Defendants began to deteriorate in 1995. In particular, Plaintiff asserts that Institutional Defendants breached its contractual and legal duties to FDLP by allowing tenants to occupy Forum shops on favorable terms often below market rent in exchange for the tenants' agreement to also lease space in other malls owned and operated by Institutional Defendants or its affiliates. In engaging in this type of self-dealing, Plaintiff claims that Institutional Defendants effectively diverted funds away from FDLP and into ventures owned and operated by them or their affiliates.

Plaintiff also claims that between 1996 and 1998, it began negotiating with Caesar's Palace regarding a theme project near the Forum Shops. However, when Herbert Simon learned of these negotiations, Plaintiff alleges that he immediately ordered Plaintiff to cease and desist the negotiations and threatened to accelerate the repayment schedule of a personal loan made by the Simons to Sheldon Gordon that had been collateralized by Gordon's equity interest in FDLP. Plaintiffs allege that as a result of this threat, it acceded to Simon's request and withdrew from a consulting arrangement with Caesar's Palace.

Although Plaintiff states that it began experiencing problems with Defendants as far back as 1995, it was unable to invoke the buy-sell option until 1998 due to a condition in the Amended FDLP Agreement, which prohibited either party from exercising the provision until a year after the opening of Phase II. Plaintiff alleges that it first attempted to invoke the buy-sell provision in 1998, but that these efforts were thwarted by Institutional and Individual Defendants. In particular, Plaintiff asserts that it signed a letter of intent with Starwood Capital Group, LLC ("Starwood"), which contemplated a joint venture between the two entities. Under this joint venture, Starwood would provide financing in the event that Institutional Defendants chose to sell their interest rather than buy out Plaintiff.

Plaintiff claims that the joint venture with Starwood unraveled after Institutional Defendants illegally refused Plaintiff access to financial books and records under their exclusive control.[3] Without this documentation, Plaintiff alleges that Starwood could not complete its due diligence, and therefore had no way of valuating the FDLP.

---

**3.** Plaintiff asserts that pursuant to its agreement with Starwood, it was eventually forced to pay more than $3 million in penalties, legal fees, and interest.

From 1999 through 2000, Plaintiff claims that it made several attempts to engage third parties to act as a finance partner in Plaintiff's bid to invoke the buy-sell provision of the FDLP Agreement. However, each time it sought to examine the books and financial records of FDLP, Institutional and Individual Defendants unlawfully refused the request. In 2000, Plaintiff alleges that it agreed to Institutional Defendants demand to terminate the partnership through an alternative disposition scheme outside of the bid-sell provision. In essence, Plaintiff asserts that Institutional Defendants sought to buy out Plaintiff's shares without allowing Plaintiff to enlist the help of a sophisticated financial institution, which could determine the value of the respective interests. Plaintiff maintains that Institutional Defendants systematically prevented it from accessing financial records and information on FDLP, and made a number of fraudulent statements including monthly letters that provided inaccurate and misleading information about Phase I and II income and expense analysis, vacancy rates, and distributions.

Also during this period, Plaintiff and Defendants were in the process of developing Phase III. Notwithstanding the fact that Plaintiff was not previously required to provide capital contributions and the implicit contractual understanding that no such obligation existed, Plaintiff alleges that Institutional Defendants improperly sought to exert financial pressure on Plaintiff by demanding capital contributions for Phase III. Plaintiff further alleges that Institutional Defendants refused to refinance the existing mortgage, which could have been done at favorable rates. Instead, David Simon reneged on a promise to guarantee a $50 million bank line of credit to Plaintiff at bank interest rates at the last moment, and offered only a loan of $16 million at a 12% interest rate. This left Plaintiff without sufficient funds to meet its capital contribution obligations for Phase III. Accordingly, Plaintiff claims that it had no alternative but to sell its stake in FDLP.

After November 2002, Plaintiff claims that Institutional Defendants improperly withheld all Phase I and Phase II distributions owed to Plaintiff. Furthermore, Plaintiff alleges Defendants engaged in several transactions that benefitted their interests to the detriment of FDLP. In particular, Defendants allegedly waived or failed to enforce radius clauses contained in the leases of several stores in the Forum Shops that would prevent them from opening stores in other centers near the Forum Shops or would impute their gross revenues to the FDLP leases. Plaintiff alleges that certain Defendants later formed a partnership with Chelsea Property Group ("Chelsea") who sought to open a competing premium outlet mall, Las Vegas Premium Outlets ("LVPO"), which contained many of the same stores as those in the Forum Shops. Plaintiff also alleges that Defendants failed to enforce the radius clauses with respect to prospective shops that were slated to open in the Grand Canal Shoppes at the Venetian Hotel. Plaintiff maintains that Institutional Defendants were negotiating to fill other malls owned by them with some of the same tenants that planned to locate in the Grand Canal, and therefore Institutional Defendants agreed to waive the radius clauses.

In early 2003, Plaintiff finally obtained the backing of Taubman Realty Group Limited Partnership and offered a bid-sell proposal sell its FDLP interest for $173,966,650, or to buy Institutional and Individual Defendants' interest for $240,733,350. Institutional and Individual Defendants elected to purchase Plaintiff's interest for $173,966,650.

Eight months after Institutional Defendants acquired FDLP, a financing effort

valued the Forum Shops at $1,000,000,000. Plaintiff claims that Defendants repeated and sustained efforts to prevent it from accurately valuating the company caused it to use a lower capitalization rate in its evaluation of FDLP's worth. Therefore, Plaintiff maintains that its limited partnership interest was actually worth $400 million, and Defendants' improper and illegal actions caused it to lose more than $225 million.

On January 4, 2005, Institutional Defendants filed a Motion to Dismiss Claims 4–1, 14–15, and 18–9 for failure to state a claim upon which relief can be granted. On the same day, the Individual Defendants filed a Motion to Dismiss in which they adopted and incorporated Institutional Defendants' arguments and analysis.

On September 30, 2005 and the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Causes of Action 4–11, 14–15, and 18–19("September 30 Order"). The September 30 Order also denied Defendants' Motion for a More Definite Statement.

With leave of the court, Plaintiff filed the SAC on November 7, 2005. On January 13, 2006, Institutional Defendants filed the instant Motion to Strike Claims Previously Dismissed With Prejudice, and to Dismiss Other Claims of the Second Amended Complaint.

## STANDARD OF REVIEW

Rule 12(f) states that a court may strike from the pleading any redundant, immaterial, impertinent or scandalous matter. The rationale behind granting motions to strike is to "avoid ... prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety." 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1382, at 715 (2d ed.1990). An allegation is "impertinent" when it is irrelevant and could not be put into evidence between the parties. 2A Moore's Federal Practice, ¶ 12.21[1]. Generally:

> Motions to strike allegedly redundant, immaterial, impertinent or scandalous matter are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied. . . . In suits involving multiple and complex issues, greater latitude in pleading may be allowed, since impertinence may not be so clear.

*Id.* at ¶ 12–207–08 (citations omitted).

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir.2005). Review is limited to the contents of the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Livid Holdings,* 416 F.3d at 946. "However, the court is not required to accept legal conclusions in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir.2004) (quoting *Clegg,* 18 F.3d at 754–55). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001)). Thus, "conclusory allegations

without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988).

## DISCUSSION

I. *Plaintiff's Claims for Violation of Nevada Racketeering Statute (Claims 4–7)*

A. *Standing*

■■■ Generally under RICO statutes, a suit for injuries to the corporation can "only be brought by the corporation itself or by a shareholder suing derivatively on behalf of the corporation." *Roeder v. Alpha Industries. Inc.,* 814 F.2d 22, 29 (1st Cir.1987); *see Allum v. Valley Bank of Nev.,* 109 Nev. 280, 849 P.2d 297, 301 (1993) (stating that the Nevada legislature patterned the Nevada RICO provisions after the federal statute). Section 88.610 of the Nevada Revised Statutes circumscribes the right of limited partners to bring an action on behalf of the limited partnership to situations where the general partners have refused to bring the action or where an effort to induce the general partners to bring such action is unlikely to succeed. Under Nevada law, a lawsuit of this nature is considered a derivative action in which the plaintiff must be a partner at the time of bringing the action. Nev.Rev.Stat. § 88.615. As noted in the September 30, 2005 Order, Plaintiff was no longer a limited partner when he commenced this suit, and therefore any attempt to bring claims derivatively on behalf of injuries suffered by FDLP is improper.

■■■ While Plaintiff may not assert claims on behalf of damages sustained by FDLP, it retains standing with regard to any injuries that it incurred directly as a result of Defendants' actions. These include, but are not limited to, Plaintiff's allegations that Institutional Defendants wrongfully withheld distribution payments owed to Plaintiff and improperly obtained Plaintiff's shares of FDLP.

B. *Economic Loss Doctrine And Underlying Merit Of Plaintiff's Claims*

■■■ Nevada courts have adopted the economic loss doctrine to limit recovery for tort claims that arise out of a party's failure to perform his contractual obligations. *Calloway v. City of Reno,* 116 Nev. 250, 993 P.2d 1259, 1263 (2000) (stating that "[t]he economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others") (citations omitted). Generally, the economic loss doctrine prevents recovery in tort for purely economic losses. *Id.* at 1263. Central to this doctrine is the principle that "economic interests are protected, if at all, by contract principles, rather than tort principles." *Id.* at 1265. The Nevada Supreme Court held that by limiting tort recovery for what are essentially breach of contract claims, it "shield[s] a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus ... keep[s] the risk of liability reasonably calculable." *Id.* at 1266 (citations omitted).

■■■ Here, Institutional Defendants assert the broad proposition that Nevada's adoption of the economic loss doctrine abrogates the ability of the legislature to proscribe statutory penalties for actions that would also constitute a breach of contractual obligations.[4] The Court dis-

---

4. Contrary to Institutional Defendants' position, the Court does not read *Olson v. Rich-*

*ard,* 120 Nev. 240, 89 P.3d 31 (2004) to re-

agrees. The Nevada RICO statute sets forth specific requirements that a plaintiff must establish distinct from a breach of contract claim in order to succeed. In order for a "plaintiff to recover under Nevada RICO, three conditions must be met: (1) the plaintiff's injury must flow from the defendant's violation of a predicate Nevada RICO act; (2) the injury must be proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff must not have participated in the commission of the predicate act." *Allum v. Valley Bank,* 109 Nev. 280, 849 P.2d 297, 299 (1993). Section 207.360 of the Nevada Revised Statutes explicitly sets forth the activities that may constitute a predicate act under the statute. Nothing in the statute or Nevada case law suggests that a garden variety breach of contractual claim in and of itself can constitute a predicate act under this provision. *See e.g. United States v. Rodrigues,* 159 F.3d 439 (9th Cir.1998); *Annulli v. Panikkar,* 200 F.3d 189, 199–200 (3d Cir.2000), *abrogated on other grounds,* 228 F.3d 471 (3d Cir.2000).

■ Where a party commits two or more predicate acts as defined in Section 207.360, and otherwise satisfies the requirements set forth in *Allum,* the fact that the acts separately also breached the party's contractual obligations does not in and of itself vitiate the RICO claim by virtue of the economic loss doctrine. *See Hale v. Burkhardt,* 104 Nev. 632, 764 P.2d 866 (Nev.1988) (considering the merits of a state RICO claim for false pretenses that arose out of the defendant's actions in breaching a contract). To find otherwise would undermine the legislature's ability to deter certain specified acts through the RICO framework simply because the underlying acts would also constitute a breach of contract.

■ Although, economic loss doctrine does not as a general rule preclude claims for violations of Nevada RICO, a plaintiff cannot state a claim under the statute by simply artfully pleading what is essentially a breach of contract claim. *Rodrigues,* 159 F.3d at 448. Therefore, in determining whether Plaintiff has failed to adequately allege the requisite underlying acts to sustain a claim for RICO, the Court must initially assess whether Plaintiff's alleged offenses are simply standard breach of contract claims dressed as a predicate act before moving to the underlying merits. *See Yerington Ford, Inc. v. GMAC,* 359 F.Supp.2d 1075, 1082–83 (D.Nev.2004).

### 1. Embezzlement

Section 205.300 of the Nevada Revised Statutes states that an offense of embezzlement occurs where

> Any bailee of any money, goods or property, who converts it to his own use, with the intent to steal it or to defraud the owner ... or any person with whom any money, property or effects have been deposited or entrusted, who uses or appropriates the money, property or effects or any part thereof in any manner or for any other purpose than that for which they were deposited or entrusted, is guilty of embezzlement .....

Nev.Rev.Stat. § 205.300.

■ As an initial matter, Plaintiff is without standing to assert any claims that Defendants embezzled FDLP funds or property. As noted above, such claims must be brought as a derivative action. Therefore, Plaintiff's only claims stem from its failure to pay distributions as required under the FDLP Agreement. Notwithstanding the significant question of whether a partner may be considered the bailee of another, the Court finds that

quire the legislature to expressly state that it seeks to impose statutory penalties in addition to those available for common law breach of

contract damages in order to ensure that statutory penalties are also enforceable notwithstanding the economic loss doctrine.

Plaintiff's allegations are an attempt to creatively plead what is in essence a standard breach of contract claim and are therefore not cognizable as a claim under RICO for violation of the Nevada embezzlement statute.

### 2. Taking Property From Another Under Circumstances Not Amounting To Robbery Including Theft And Larceny

■■■■ Plaintiff asserts that Defendants' actions in allegedly converting Plaintiff's property to its own constitute a violation of the Omnibus Theft Crime Statute, N.R.S. § 205.0832 et seq. This claim fails for the same reasons stated above. Even assuming *arguendo* that Defendant's failure to pay distributions or misconduct in the buy-sell transaction could constitute "taking property from another under circumstances not amounting to robbery, including theft and larceny," the Court finds that these actions arise out of an partnership dispute governed by a contract and were not envisioned by the legislature as a predicate crime for a RICO violation. The Court agrees with the analysis in *Rodrigues*, in which the Ninth Circuit stated that "if a party committed theft every time it failed to pay, or failed to cause another to pay, money when due, RICO law would swallow up much of the common law of contracts." *Rodrigues*, 159 F.3d at 448. Therefore, the Court finds that Plaintiff's allegations are insufficient to state a predicate act of "taking property from another under circumstances not amounting to robbery, including theft and larceny."

### 3. Extortion

Section 205.320 of the Nevada Revised Statutes states in part that:

A person who, with the intent to extort or gain any money or other property or to compel or induce another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intended to affect any cause of action or defense, or any property ... threatens directly or indirectly to ... injure a person or property ... is guilty of [extortion].

Plaintiff alleges in his Complaint that Defendants (1) threatened frivolous and costly litigation against it; (2) threatened to withhold partnership distributions; and (3) threatened to improperly freeze-out Plaintiffs from participation in Phase III of the Forum Shops.

■■■■ The Court finds that Plaintiff has failed to plead sufficient facts to state a claim under RICO for extortion. Even accepting Plaintiff's allegation that Defendants threatened frivolous legal action against Plaintiff as true, the Court finds that a threat of suit generally does not constitute an predicate act of extortion upon which to stake a RICO claim. *First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir.1988); *American Nursing Care of Toledo v. Leisure*, 609 F.Supp. 419, 430 (N.D.Ohio 1984) (stating that the threat of litigation is not a predicate act for RICO purposes).

■■■■ Plaintiff has also failed to adequately plead a claim for extortion with regard to its other allegations. In particular, Plaintiff asserts in its Opposition that Defendants threatened to withhold partnership distributions, but fails to direct this Court to any factual basis upon which to assess the sufficiency of these allegations in the Complaint.[5]

---

5. Plaintiff, under his claim of extortion, fails to provide any factual allegations regarding the purported threat to discontinue partnership distributions. (SAC, ¶¶ 294–299). Furthermore, in its Opposition, Plaintiff cites to ¶¶ 73–74, 132 133 of the SAC, but these paragraphs contain no facts regarding any threats to Plaintiff.

█ Plaintiff's final claim that Defendants threatened to freeze Plaintiff out of Phase III similarly lacks sufficient allegations in the SAC. Plaintiff asserts that Defendants demanded capital contributions in order to proceed with the development of Phase III. However, while Plaintiff alleges that this improper demand was made for the purpose of bringing economic pressure upon Plaintiff, it does not provide any allegations that Defendants threatened Plaintiff with injury to its person or property if it failed to accede to their demands. Rather, Plaintiff only alleges that Defendants made the contribution demand with the intent of freezing Plaintiff out of Phase III.[6] Accordingly, the Court finds that Plaintiff has failed to plead a claim of extortion.

### 4. False Pretenses

Defendants assert that Plaintiff's predicate act of false pretenses fails on two grounds: (1) Plaintiff has failed to plead the claim with sufficient particularity as required under Federal Rule of Civil Procedure 9(b); and (2) Plaintiff cannot plead the essential element of reasonable reliance on any of the statements or omissions it alleges. The Court disagrees.

█ Section 205.380 of the Nevada Revised Statutes provides that:

A person who knowingly and designedly by any false pretense obtains from any other person any chose in action, money, goods, wares, chattels, effects or other valuable thing, including rent or the labor of another person not his employee, with the intent to cheat or defraud the other person, is a cheat, and, unless

otherwise prescribed by law, shall be punished...

Nev.Rev.Stat. § 205.380. In order to prevail on a claim for false pretenses, a party must establish the following elements: (1) intent to defraud; (2) a false representation;[7] (3) reliance on that representation; and, (4) that the victim be defrauded. *Bright v. Sheriff, Washoe County*, 90 Nev. 168, 521 P.2d 371, 372 (1974).

█ As an initial matter, the Court finds that Plaintiff has plead his allegations of fraud with sufficient particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides in pertinent part that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct." *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir.2003). Therefore, the allegations of fraud must be accompanied by the "who, what, when, where, and how of the misconduct charged." *Id.* Courts must strike a balance between providing adequate notice to the adverse party while at the same time not effectively requiring pre-discovery. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 999 (9th Cir. 1999).

█ Plaintiff's SAC alleges that in 2002 Defendants sent a number of letters, purposefully providing inaccurate, misleading, and incomplete information. Plaintiff also claims that the letters and monthly reports that Defendants provided regarding the financial status of FDLP were

---

**6.** Plaintiff also alleges that after it declined to provide capital contributions, Defendants later withheld FDLP distributions. However, Plaintiff makes no allegations Defendants at any point threatened to take such action if Plaintiff failed to make the capital contributions.

**7.** A false representation need not be direct. "The representation may be *implied from conduct*, or may consist of *concealment or non-disclosure* where there is a duty to speak.". *Bright*, 521 P.2d at 373.

misleading and did not paint a true picture of the company in that they did not divulge activities that certain Defendants were involved in outside of FDLP. In particular, Plaintiff alleges that Defendants failed to disclose: (1) their policy of leveraging rents in the Forum shops with those in less desirable malls owned by them; (2) their partnership with Chelsea and subsequent waiver of or failure to enforce radius clauses in the leases of shops located in the Forum Shops; and (3) FDLP's financing options with regard to the Phase III development.

Plaintiff alleges that Defendants agreed not to charge tenants in the Forum Shops market rates for their leases in exchange for the tenants' agreement to enter into leases at less desirable locations and malls separately owned by Defendants. Essentially, Defendants held out attractive rates in the Forum Shops as bait to subsidize its vacancies in other malls. As a result of Defendants' failure to disclose this leasing practice, Plaintiff maintains that the rent rolls understated the market value of rents that FDLP could collect for the Forum Shops in the absence of Defendants' leveraging practice.

Plaintiff also alleges that many of the shops were bound by "radius clauses," which effectively prevented them from opening competing stores within a specified distance from the Forum Shops. Plaintiff maintains that the leases required that 100% of the sales receipts from any other stores opened within the prohibited area were to be added to the tenants' sales receipts at the Forum Shops location for purposes of computing their rent.

In 2002, Plaintiff asserts that Chelsea formed a partnership with Defendants to open the LVPO. Plaintiff alleges that Chelsea partnered with Defendants because many of the prospective stores in the LVPO had leases in the Forum Shops and were subject to the radius clauses. Subsequent to the partnership, Plaintiff maintains that Defendants either waived the radius clauses or failed to enforce them. Several Forum Shop stores, including but not limited to Polo Ralph Lauren, St John Knits, and Bennini, opened in the LVPO despite their radius clauses. As a result, Plaintiff asserts that the rent chargeable to the tenants in Forum Shops, as reflected in the financial information provided to Plaintiff, indicated amounts significantly lower than FDLP was entitled to obtain had Defendants enforced the radius clauses.

Finally, Plaintiff provides substantial and specific allegations regarding the financing options and equity interest held by Defendants in trust for FDLP, that Defendants either failed to disclose or misrepresented. Based on the misinformation provided, Plaintiff maintains that it undervalued its interest in FDLP in connection with its buy-sell transaction in January 2003.

The Court finds that Plaintiff's allegations as discussed above provide sufficient detail to satisfy the requirements of Rule (b). In the absence of discovery, Plaintiff cannot be expected to provide detailed financial information and other items related to the alleged misrepresentations or omissions as Defendants suggest. Accordingly, the Court finds that Plaintiff has met its pleading burden under Rule 9(b).

 Defendants also assert that Plaintiff's fraud claims fail on the basis that Plaintiff cannot show that Defendants actually misrepresented the value FDLP or other financial information related to the joint venture. Even assuming *arguendo*, that Defendants waived the radius clauses and engaged in leverage leasing, Defendants assert that the rent figures and financial information provided to Plaintiff in fact accurately reflected the reduced value of Plaintiff's interest in FDLP, and there-

fore no misrepresentation occurred. Defendants' characterization is unavailing.

Plaintiff does not dispute that the rent rolls and financial information provided by Defendants contained facially accurate information. Rather, Plaintiff's argument is that these documents were indirectly misleading on the basis that Defendants had a duty to disclose its activities with regard to radius clause waivers and leveraged leases. *See Bright,* 521 P.2d at 373 (finding that a misrepresentation of omission need not be direct). Had Defendants disclosed these facts to Plaintiff, it could have either taken action to prevent Defendants from engaging in the activity, or could have considered these facts when calculating the potential value of the company. As a result of these material omissions, Plaintiff asserts that it was not in a position to realize that the lease figures and financial information provided by Defendants did not portray a true and accurate picture of the value of its stake in FDLP, and therefore contributed to its low offer in January 2003.

 Finally, Defendants claim that even assuming the truth of the allegations asserted, Plaintiff has failed to allege reasonable reliance as required to establish a claim of false pretenses. While Section 205.380 of the Nevada Revised Statutes does not expressly provide that reliance must be reasonable, Nevada courts, have consistently found that deceit and other actions for fraud require justifiable reliance on the part of the party asserting the claims. *See Collins v. Burns,* 103 Nev. 394, 741 P.2d 819, 821 (1987) (stating that "lack of justifiable reliance bars recovery in an action for damages for the tort of deceit"); *Albert H. Wohlers & Co. v. Bartgis,* 114 Nev. 1249, 969 P.2d 949, 957–58 (1998) (finding that justifiable reliance is an essential element of a fraud claims); *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.,* 120 Nev. 277, 89 P.3d 1009, 1018 (2004) (requiring justifiable reliance for fraudulent inducement). The Court finds that the requirement of justifiable reliance is especially appropriate in RICO cases, which have the concomitant threat of treble damages.

While the Court has serious concerns whether Plaintiff can eventually establish that it justifiably relied on the alleged omissions and misrepresentations, the Court finds that it has plead the bare minimum allegations to proceed with its RICO claim under a theory of false pretenses. In particular, the Court finds that the premise for most of Plaintiff's false pretense claims are material omissions. In the security context, the Ninth Circuit has held that a party is entitled to a presumption of reliance where "the facts withheld [are] material in the sense that a reasonable investor might have considered them important in the making of [his] decision." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Furthermore, the fiduciary relationship that existed between Plaintiff and Defendants, while not relieving Plaintiff of its duty to make reasonable inquiries, created a duty upon Defendants to disclose any activities that would materially reduce the value of their joint venture. *See e.g. AES Corp. v. Dow Chem. Co.,* 325 F.3d 174, 180 (3d Cir.2003).

Although the Court finds that Plaintiff has pled sufficient facts to survive the instant motion to dismiss, it does so with reservations, and therefore will carefully reconsider the issue of reasonable reliance at the summary judgment stage when Plaintiff will be required to come forward with affirmative evidence that it justifiably relied on the alleged omissions in calculating its bid-offer price.

### 5. State Securities Fraud

Section 905.70 of the Nevada Revised Statutes provides that:

In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:

1. Employ any device, scheme or artifice to defraud;

2. Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or

3. Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

Nev.Rev.Stat. 905.70. Plaintiff asserts that the above-referenced omissions and misrepresentations constituted a violation of Section 906.70.

■ As an initial matter, Plaintiff premises many of his state securities fraud claims on Defendants' alleged refusal to provide it access to records and financial information as required under the FDLP Agreement and applicable state laws. However, these do not constitute untrue statements or material omissions. (SAC, ¶ 336.). Rather, Plaintiff claims that Defendants owed a statutory and contractual duty to provide certain information, which it refused to do. This refusal to provide requested information may constitute a basis for Plaintiff's other claims but not fraud in the sale or purchase of security.

■ In addition, the Court finds that Plaintiff's claim that the purported misstatements and omissions recited in the SAC were accomplished in connection with the sale or purchase of a security is tenuous at best. Plaintiff claims that Defendants failed to disclose the radius clause waivers, its partnership with Chelsea, and its policy of leveraging leases resulted in misrepresentations with regard to the monthly reports that it received. Furthermore, Plaintiff alleges that Defendants en-

gaged in the above acts in order to benefit their outside ventures at the expense of FDLP and Plaintiff. Significantly, Plaintiff does not assert that the alleged acts were undertaken in connection with the purchase of Plaintiff's share in FDLP. In fact, Defendants themselves never invoked the buy-sell agreement. Rather, it was only after Plaintiff proposed an offer that Defendants chose to purchase Plaintiff's shares rather than sell their own. While these facts are troubling to the Court, the term "in connection with" has not been clearly defined under Nevada law. However, courts interpreting similar language in federal security laws have afforded this phrase a liberal interpretation. *See e.g. Alley v. Miramon*, 614 F.2d 1372, 1378 (5th Cir.1980). Therefore, despite the Court's serious doubts as to the viability of Section 905.70 to Plaintiff's claims of alleged misrepresentations, it must construe all inferences in favor of Plaintiff at this stage, and therefore finds that Plaintiff has provided sufficient allegations to allege a violation of Nevada securities law.

### 6. Commercial Bribery

■ Plaintiff's claim for violations of RICO premised on Section 207.295 of the Nevada Revised Statutes fails as matter of law. As noted above, the Nevada RICO statute sets forth specific crimes on which RICO liability can be based. Section 207.295 is not among these crimes. Accordingly, the Court finds that Plaintiff's attempt to base a RICO violation on this provision is without merit.

### II. Violations of Nevada Securities Law (Claim 8)

■ Although the Court finds that Plaintiff stated sufficient facts to state a predicate RICO act for violations of Section 90.570 of the Nevada Revised Statutes, it holds that Plaintiff lacks standing under Section 90.660 of the Nevada Re-

vised Statutes to bring a separate and independent claim for civil enforcement. Section 90.660 expressly limits recovery under Section 90.570 and other provisions to parties who purchase a security. Plaintiff does not dispute that the plain language of the statute limits its scope to those who purchase securities. Rather, it asserts that the Court should infer that the legislature intended to include sellers as well within the ambit of the statute. The Court finds the plain language controlling and declines Plaintiff's invitation take make such an interpretive leap. Therefore, the Court concludes that Plaintiff lacks standing to assert his claims for violation of Nevada security laws.

### III. Breach Of Fiduciary Duty (Claims 9–11)

■■■ Defendants initially assert that Plaintiff's breach of fiduciary duty claims are barred by the economic loss doctrine. As discussed above, where a party asserts tort claims for pure economic loss, as opposed to injury to person or property, the Court must examine the tort claims to determine whether they are sufficiently divorced from the contractual claims such as to remove them from the scope of the doctrine. *Yerington*, 359 F.Supp.2d at 1082–83. Where a statute imposes a independent duty upon parties not provided for by contract, breach of that duty is not subsumed under the economic loss doctrine. *Id.* at 1084; *see also Calloway*, 993 P.2d at 1263.

■■■ The Court is not in a position at this stage to determine the duties and obligations assumed by Defendants pursuant to the FDLP Agreement. However, the Court notes that to the extent that the breaches of fiduciary duty alleged in claims 9–11 also constitute a violation of Defendants contractual obligations, the economic loss doctrine will subsume the claims and merit dismissal of Plaintiff's independent tort claim. *See Yerington*, 359 F.Supp.2d at 1084.

### A. Usurpation of Business Opportunities Belonging To The Partners In FDLP (Claim 9)

In its ninth claim, Plaintiff asserts that Defendants' actions with regard to the Phase III development and in connection with Chelsea and LVPO venture constitutes a breach of fiduciary duty upon which Plaintiffs may recover. The Court disagrees.

■■■ The overwhelming allegations in the ninth claim allege injury to FDLP as a result of Defendants' actions. In particular, Plaintiff alleges that Defendants: (1) sought to exclude FDLP, and thus Plaintiff, from the Phase III development plan; (2) entered into a joint venture with Chelsea for the LVPO and subsequently waived radius clauses for tenants in the Forum Shops thereby depriving FDLP of additional rent to which it was entitled. As noted above, Section 88.610 of the Nevada Revised Statutes explicitly circumscribes the ability of a limited partner to bring a derivative action on behalf of the partnership.[8]

■■■ Plaintiff's claim that Defendants breached a fiduciary duty to it by not including it into its partnership with Chelsea is also without merit. Plaintiff alleges no facts that would sustain a finding that Defendants owed a duty to include Plaintiff into other partnerships independent of their commitment to FDLP.[9]

---

8. Plaintiffs' reliance on out of state authority for the proposition that a partner may sue another partner for usurpation of business opportunity is inapposite. The cases cited by Plaintiff all involve general partnerships, not a limited partnership.

9. Even assuming that Defendants owed a duty to include FDLP with regard to outside busi-

While the Court has serious concerns regarding Plaintiff's claims for breach of fiduciary duty with regard to Defendants' acts in connection with the Phase III development, especially in light of the economic loss doctrine, the Court finds that it has alleged sufficient facts to state a direct injury. Accordingly, the Court denies Defendant's motion to dismiss claim nine to the extent that it is based on the alleged acts undertaken by Defendants to deprive Plaintiff of opportunities in connection with Phase III.

### B. Defendants' Failure To Provide Information (Claim 10)

Plaintiff's tenth claim essentially reasserts its previous allegations that Defendants failed to disclose information or provided inaccurate and misleading information on a number of occasions. The Court finds that Plaintiff has pled the underlying facts with sufficient particularity to place Defendant on notice of the claims. See Vess, 317 F.3d at 1106. Furthermore, the Court holds that Plaintiff has alleged sufficient facts to show that it detrimentally and justifiably relied on these misrepresentations and omissions. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's tenth claim.[10]

### C. Breaches Of The Fiduciary Duty Of Loyalty (Claim 11)

As in Plaintiff's ninth claim, many of Plaintiff's claims for breach of the duty of loyalty seek to recover for damages sustained by FDLP. These include Plaintiff's allegations that Defendants: (1) diverted, converted, and embezzled substan-

tial rental proceeds (SAC ¶ 378a); (2) withheld, converted, and embezzled FDLP monies (SAC ¶ 378b); (3) took, destroyed, and converted partnership property without compensating FDLP (SAC ¶ 378c); (4) unlawfully converted FDLP revenues to it own use by leveraging its leases in the Forum Shops (SAC ¶ 378j); (5) destroyed Phase I property in order to carry out Phase III expansion (SAC ¶ 378m); and (6) exposed Plaintiff to the risk that a landlord in the Forum Shops would take legal action against FDLP (SAC ¶ 378n). These are improper for the reasons stated above. See Nev.Rev.Stat. § 88.610.

Other allegations such as Plaintiff's claims that Defendants wrongfully withheld partnership distributions under the Amended FDLP Agreement are clearly barred by the economic loss doctrine. These include the allegations contained in paragraphs 378i, 378k, and 378l of the SAC. With regard to Plaintiff's other allegations, the Court restates its position that they have been sufficiently plead, but are subject to dismissal pursuant to the economic loss doctrine if the Amended FDLP Agreement prohibited such acts.

### IV. Conversion (Claim 13)

Plaintiff's claims for conversion suffer from many of the same infirmities as the above causes of action. In particular, Plaintiff does not have standing to recover on its allegations that Defendants converted FDLP property. See Nev.Rev. Stat. § 88.610.[11] Furthermore, the economic loss doctrine bars Plaintiff's claims that

---

ness ventures that would affect FDLP's interests, breach of that duty would harm Plaintiff only derivatively through FDLP.

10. The Court reiterates that depending on the scope of the FDLP Agreement, most of the alleged violations in the tenth claim may be precluded by the economic loss doctrine.

11. Plaintiff's contention that Defendants waived their right to challenge the claim of conversion by not bringing it in the first motion to dismiss is without merit. Plaintiff filed the SAC and Defendants are well within their rights to assert defenses to the claims contained in the SAC even if they chose not to do so in the FAC.

Defendants withheld distributions owed pursuant to the Amended FDLP Agreement. Accordingly, Plaintiff's allegations in paragraphs 390, 391, 392, and 393 are dismissed.

■ Plaintiff's remaining claims are also without merit. Plaintiff asserts that Defendants committed acts of conversion by (1) creating a separate legal entity through which it conducted Phase III expansion, thereby excluding Plaintiff and usurping a partnership opportunity; and (2) excluded Plaintiff from its partnership with Chelsea to develop the LVPO.

■ Under Nevada law, conversion is defined "as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights...." *Ferreira v. P.C.H., Inc.*, 105 Nev. 305, 774 P.2d 1041, 1043 (1989) (citations excluded). Neither of the above alleged acts constitute a wrongful dominion over Plaintiff's personal property. Therefore, the Court dismisses Plaintiff's claim for conversion.

## V. Negligent Misrepresentation (Claim 15)

■ Nevada has adopted the Restatement (Second) of Torts definition of negligent representation:

One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or

competence in obtaining or communicating the information.

*Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382, 1387 (1998). The elements are similar to that of a crime of false pretenses under Section 205.380 of the Nevada Revised Statutes with the exception that a party need not intend to defraud under a negligent misrepresentation claim.[12] *See Bright*, 521 P.2d at 372. For the same reasons as stated in section I(B)(4) *supra*, the Court finds that Plaintiff has plead with sufficient particularity the allegations underlying its claim for negligent representation pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. In addition, while Plaintiff's allegations of justifiable reliance are attenuated at best, the Court will afford Plaintiff the benefit of the doubt at this early stage of litigation. Accordingly, the Court denies Institutional Defendants' motion to dismiss Plaintiff's claim for negligent misrepresentation.

## VI. Violation of Federal Securities Laws

■ In order to state a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), a plaintiff must allege (1) misrepresentation or omission of a material fact; (2) scienter; (3) reliance; and (4) resulting damages. *Paracor Fin., Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir.1996).

■ Defendants assert that Plaintiff has failed to meet the heightened pleading standard set forth in the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"). The PSLRA provides that:

In any private action arising under this chapter in which the plaintiff alleges that the defendant—

---

**12.** As discussed *supra*, the elements of a claim for false pretenses are: (1) intent to defraud; (2) a false representation; (3) reliance on that representation; and, (4) that the victim be defrauded

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1). The PSLRA requires a plaintiff to furnish a detailed list of all relevant circumstances regarding the falsity of any statement. *See Desaigoudar v. Meyercord,* 223 F.3d 1020, 1023 (9th Cir.2000).

The PSLRA also contains explicit pleading requirements with respect to scienter. The relevant section states that:

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2).

In the instant case, Plaintiff provides a laundry list of misrepresentations an omissions that Defendants or their representatives allegedly made related to FDLP. While Plaintiff certainly stretches the boundaries of acceptable pleading under the PSLRA, the Court finds that Plaintiffs have alleged with sufficient particularity the facts surrounding the alleged misrepresentations and omissions.

However, the Court finds that Plaintiff has failed to plead scienter with sufficient particularity as required under the PSLRA. Plaintiff's primary basis for establishing a strong inference of scienter is an alleged conversation that took place between David Simon and Richard Lieb of Goldman Sachs. In that dinner conversation, David Simon allegedly responded to Lieb's question of "how the Hell did you provide financing to fund the [bid-sell]" by stating that he never gave Plaintiff one piece of information. Plaintiff relies on this statement to support its contention that Defendants knew that the numerous statements that they or their representative made were misrepresentations for the purpose and effect of concealing the financial value of FDLP from Plaintiffs. The Court finds that Plaintiff reliance on this statement unfounded. As an initial matter, the statement is subject to several interpretations. Furthermore, even if David Simon made such a comment, it does not indicate that Defendants knew that the individual statements noted by Plaintiff were misleading.

Plaintiff has alleged that Defendants made fifteen distinct misrepresentations. Aside from this nebulous statement allegedly made during a dinner conversation, Plaintiff has provided little else in support of their claims of misrepresentations or omissions. Plaintiffs assert that David Simon and James Barkley are in possession of information that expressly contradict the representations made to Plaintiff and Gordon in the October 28, 2002 and December 16, 2002 letters. However, thirteen of the fifteen alleged misrepresentations ascribed to Defendants stem from these letters. Plaintiffs do not state what the information is or what parts of the letters this information contradicts.

Next, Plaintiff asserts that Defendants must have been aware that the value of FDLP was greater than the monthly operating summaries and Phrase III pro form

**1246**

projections indicated. In support of this theory, Plaintiff states that Defendants obtained mortgage financing a few months after the transaction that implicitly valued the Forum Shops at $1 billion. Plaintiff claims that negotiations for such financings take months, and therefore Defendants, by fiat, must have had accurate financial information to valuate the company prior to the sale. The Court finds that Plaintiff's contention is mere speculation and conjecture unsupported by any specific facts as required under the specific pleading requirements PSLRA. Finally, Plaintiff seeks to establish scienter on the basis that Defendants were in full control of the financial documents related to FDLP as well as the alleged non-disclosed or misrepresented information. Therefore, they must have known that the information that they provided or omitted to provide Plaintiff was incomplete or false. Plaintiff's tautological argument is unconvincing. Simple possession of documents and information alone is insufficient to establish scienter. Therefore, the Court finds that Plaintiff has failed to meet its burden of pleading facts that establish a strong inference of scienter as required under the PSLRA. Accordingly, the Court dismisses Plaintiff's claim for violation of federal securities laws.

### CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Institutional Defendants' Motion to Strike Claims Previously Dismissed with Prejudice, and Motion to Dismiss Other Claims of the Second Amended Complaint and Defendant David Simon's Motion to Dismiss as provided specifically herein.

IT IS SO ORDERED.